| | |
|---|---|
| | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EDWARD RINEHART,<br><br>            Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA,<br>            Defendant. | Case No. C08-5486 RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S ERISA DEFENSE AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT |

THIS MATTER is before the Court on Plaintiff's Motion for Partial Summary Judgment on Defendant's ERISA defense [Dkt. #13], and Defendant's Cross Motion for Summary Judgment [Dkt. #23]. Plaintiff seeks an order determining that ERISA does not apply to his claims under a long term disability plan, and dismissal of Defendant's affirmative ERISA defense. Defendant argues that ERISA does apply, and that Plaintiff's state law claims are therefore preempted. Defendant also argues that because ERISA applies, this Court lacks jurisdiction and that Plaintiff lacks standing to sue Defendant. For the reasons set forth below,

Plaintiff's Motion for Partial Summary Judgment is GRANTED, and Defendant's Cross Motion for Summary Judgment is DENIED.

## I. Introduction

Plaintiff was an employee at Providence St. Peters Hospital, a division of Providence Health & Services (PH&S) when he became disabled. (Sieler Dec., Ex. 2, p. 3). PH&S was founded and continues to be sponsored by the Sisters of Providence, a religious order of the Catholic Church[1] [Dkt. #13; Dkt. #23]. PH&S sponsored and administered a long-term disability plan (LTD Plan) which insured Plaintiff at the time he became disabled. *Id*. Defendant, Life Insurance Company of North America (LINA) issued the policy underwriting the LTD Plan and acted as the claims administrator for the LTD Plan.

Plaintiff became disabled on August 8, 2005, and began receiving disability benefits under the LTD Plan [Dkt. #17, Ex. I]. On October 10, 2007, LINA notified Plaintiff that it was terminating all disability payments, due to an evaluation indicating that Plaintiff was no longer "disabled" as that term is defined by the LTD Plan [Dkt. #17, Ex. A]. On August 1, 2008, Plaintiff commenced this action against LINA, alleging the following state law claims: breach of contract, breach of the implied covenant of good faith and fair dealing in insurance contracts, violation of RCW 48.30.015 (the Washington Insurance Fair Conduct Act), violation of RCW 48.30 *et seq*. (the Washington Unfair Trade Practices Act), and violation of RCW 19.86 *et seq*. (Washington State's Consumer Protection Act) [Dkt. #1]. Notably, Plaintiff did not allege any violations of the Employee Retirement Income Security Act (ERISA)[2].

Defendant alleges, by way of an affirmative defense, that ERISA preempts all of Plaintiff's state law claims [Dkt. #6]. Defendant further alleges that because ERISA applies, Plaintiff lacks standing to

---

[1] PH&S is a tax exempt organization under § 501(c)(3) of the Internal Revenue Code (Sieler Dec., Ex. 2, pp. 3-4); [Dkt. #1; Dkt. #6].

[2] Plaintiff alleged diversity jurisdiction under 28 U.S.C. § 1332 [Dkt. #1]. The parties apparently agree that Plaintiff is a citizen of Washington state and Defendant is incorporated in Pennsylvania with its principal place of business in Connecticut, and the amount in controversy exceeds $75,000. *Id*.

bring this action against LINA[3] [Dkt. #23]. Because PH&S (a Washington Resident for purposes of jurisdiction) would then be the only other party possibly liable for Plaintiff's claims, Defendant argues that the Court would then lack subject matter jurisdiction as diversity jurisdiction would no longer exist. Plaintiff alleges that ERISA does not apply and requests that the Court dismiss Defendant's affirmative defense and allow him to pursue his state law claims. Two issues are presented in determining whether ERISA applies to the LTD Plan. First, whether the LTD Plan qualifies as a "church plan" as defined by ERISA [Dkt. #13]. Second, whether PH&S ever made an election under § 410(d) of Title 26, thereby electing to have ERISA apply to the LTD Plan. *Id.* Only after determining if ERISA applies can the Court address the merits of Defendant's cross motion for summary judgment.

## II. Discussion

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*,

---

[3] ERISA authorizes suits by a claimant against plan administrators but not against claims administrators. *Ford v. MCI Communications Corp. Health and Welfare Plan*, 399 F.3d 1076 (9th Cir. 2005). Therefore, if ERISA applies, Plaintiff's lacks standing to sue LINA (because it is the claims administrator) for ERISA plan benefits.

477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

ERISA was enacted to comprehensively protect the interests of employees and their employee benefit plans such as retirement and disability plans. *Ingersoll-Rand Co., v. McClendon*, 498 U.S. 133, 137 (1990). ERISA applies to employee benefit plans established or maintained by any employer engaged in commerce. 29 U.S.C. § 1003(A). "Any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).

ERISA also establishes certain specific exceptions which fall outside the statute's regulatory and preemptive power. 29 U.S.C. 1003(b). One such exception is an employee benefit plan called a "church plan." Church plans are not ERISA plans. *Id*. Rather, they are plans "established or maintained for . . . employees . . . by a church or by a convention or association of churches which is exempt from tax under section 501 of [the Internal Revenue Code]." 29 U.S.C. § 1002(33)(A).

The term "church plan" is somewhat misleading because even a plan established by a corporation *controlled by or associated with* a church can also qualify as a church plan. This occurs in two ways. First, ERISA defines "church plan" to include plans "maintained by an organization, whether a civil law corporation or otherwise, the *principal purpose* or function of which is the administration or funding of a plan . . . for the employees of a church . . .if such organization is *controlled by or associated with* a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(i)[4] (emphasis added).

Second, 29 U.S.C. § 1002(33)(C)(ii)(II)'s definition of the term "employee" broadens the scope of

---

[4] Defendant relies on 29 U.S.C. § 1002(33)(C)(i) which states "A plan established or maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association or churches, if such organization is controlled by or associated with a church or a convention or association of churches."

the term "church plan." This section states that an "employee of a church . . . includes an employee of an organization . . . which is *controlled by or associated with* a church or a convention or association of churches[5]." (Emphasis added). It is important to note the absence of the "principal purpose" language in this provision of the statute. By leaving out that language, "ERISA brings a plan established or maintained by a non-church organization within the general definition of a 'church plan' if that organization is '*controlled by*' or '*associated with*' a church." *Catholic Charities of Maine, Inc. v. City of Portland*, 304 F.Supp.2d 77, 85 (D.Me.2004) (emphasis added).

**A. The LTD Plan is a "Church Plan" and is Exempt from ERISA**

Defendant argues that for the LTD Plan to qualify as a "church plan" it must satisfy the narrower provision of §(33)(C)(i). Defendant argues that §(33)(C)(i) requires that the principal purpose of the organization offering the benefits plan, must be the administration of that plan [Dkt. #23]. Plaintiff argues, convincingly, that §(33)(C)(ii)(II) significantly broadens the scope of the term "church plan" and brings the LTD Plan within the general definition of a "church plan." Plaintiff argues that because PH&S is *controlled by* and *associated with* a church, and because it has not outsourced the administration of the LTD Plan to a third party, that the LTD Plan qualifies as "church plan." The parties have raised great ado about the correct statutory provisions intended to cover "church plans" under ERISA. Understandably, as ERISA is inherently difficult to parse, both Plaintiff and Defendant focus on different portions of the statute in supporting their argument. To better understand the difference between the two statutory provisions a close analysis of those provisions is required.

§(33)(C)(i) and §(33)(C)(ii)(II) differ in one important way. §(33)(C)(i) requires that the organization (in our case PH&S, or, more specifically the Vice President of Human Resources for PH&S)

---

[5] Plaintiff relies on 29 U.S.C. § 1002(33)(C)(ii)(II), which importantly does not include the "principal purpose" language from 29 U.S.C. § 1002(33)(C)(I), which Defendant relies on for its argument. 29 U.S.C. § 1002(33)(C)(ii)(II) states "the term employee of a church or a convention or association of churches includes . . . an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches."

administering the benefits plan have as its *principal purpose* the duty of administering the benefits plan. Read in a vacuum, §(33)(C)(i) seems to limit the non-church organizations which can establish church plans to only those organizations whose principal purpose or function is the administration or funding of a benefits plan. However, case law analyzing the statute as well as sound statutory interpretation show that this limited view is incorrect.

The case law analyzing the effect of §(33)(C)(i) has interpreted the provision as non-limiting. "Courts have overwhelmingly interpreted § 1002(33)(C)(i) as *not limiting* the non-church organizations which can establish church plans to those whose 'principal purpose or function' is the administration or funding of a retirement . . . plan." *Torres v. Bella Hospital, Inc.*, 523 F.Supp.2d 123, 142 (Dist. Puerto Rico 2007) (Citations omitted)[6] (emphasis added). §(33)(C)(i) specifically deals with the situation where an employer uses a third party to administer the benefits plan, when that third party is not affiliated with the employer. In that limited instance, the third-party plan administrator must have as its *principal purpose or function* the administration of the benefits plan. *See Friend v. Ancillia Systems* Inc., 68 F.Supp.2d 969, 973 (N.D.Ill. 1999), *citing Health Const. Control v. Fuxan*, 1997 WL 725440 (E.D.La., Nov. 17, 1997). Put another way, (33)(C)(i) only acts to limit the church plan exception to situations where the benefits plan is administered (or funded) by a third party.

§(33)(C)(ii)(II) operates in a wholly different capacity. Instead of limiting the number of plans that qualify as "church plans," this provision broadens the scope of the term "church plan." By defining the term "employee" in the manner it does, §(33)(C)(ii)(II) broadens the definition of the term "church plan." The provision defines an employee of a church broadly, stating that an "employee of a church . . . includes an employee of an organization . . . which is *controlled by or associated with* a church or a

---

[6] *See Chronister v. Baptist Health*, 442 F.3d 648, 652-53 (8th Cir. 2006) (treating healthcare organization as encompassed within the church plan exception if it is *controlled by or associated with* a church regardless of its *principal purpose* or function); *Lown v. Continental Casualty Co.*, 238 F.3d 543, 547-48 (4th Cir. 2001) (same); *Catholic Charities*, 304 F.Supp.2d at 86 n. 4 (§1002(33)(C)(i) provides "an alternative means of satisfying the 'church plan' definition" rather than limiting the definition of the church plan).

convention or association of churches." (Emphasis added). This language necessarily increases the types of organizations which may establish and maintain "church plans."

Considering §(33)(C)(ii)(II)'s broadening effect on what qualifies as a church plan, the crux of the analysis must focus on whether PH&S is *controlled by **or** associated with* a church[7]. "Controlled by" is not defined by ERISA; however, courts have taken the language to mean "referring to corporate control, such as control over the appointment of a majority of the non-church organization's officers or Board of Directors." *Catholic Charities*, 304 F.Supp.2d at 85 (citing *Lown*, 238 F.3d at 547). *See also* 26 C.F.R. § 1.414(e)-1d2 ("an organization, the majority of whose officers or directors are appointed by a church's governing board, or by officials of a church, is controlled by a church"). "Associated with" is defined by ERISA. 29 U.S.C. § 1002(C)(iv) clearly identifies the requisite relationship, providing "an organization . . . is associated with a church . . . if it shares religious bonds and convictions with that church."

PH&S is "controlled by" the Catholic Church through the Sisters of Providence[8]. Indeed, Defendant admits that PH&S is controlled by the church within the meaning of (33)(C)(iv). (Sieler Dec., Ex. 2, p. 3). Moreover, the Department of Labor and the Internal Revenue Service have concluded that PH&S is controlled by the Roman Catholic Church[9]. *Id* at 5; (Rogers Dep., Ex. 2, p. 6). Applying the

---

[7] Defendant argues that (33)(C)(i) should apply because the LTD Plan is administered by a third-party administrator, to wit, the Vice President of Human resources of PH&S [Dkt. #23]. This argument fails because the Vice President of Human Resources for PH&S is by no means a third party *"organization"* as required under (33)(C)(i) (it is important to note that this is the means by which Defendant justifies its "principal purpose or function" argument and for the application of (33)(C)(i) to the facts of this case). Indeed PH&S selected the Vice President of Human Resources (or his/her designee) as the LTD Plan Administrator/Plan Sponsor. However, because the Vice President of Human Resources is employed by and under the direct control of PH&S, and there are no facts suggesting that the Vice President qualifies as a separate "organization" under the statute, the Court considers PH&S and the Vice President as one-in-the-same "organization" for purposes of the church plan exception.

[8] The parties do not dispute that in 1995, the Department of Labor determined that the Sisters of Providence was controlled by and associated with the Roman Catholic Church within the meaning of (33)(C)(iv). (Sieler Dec., Ex. 2, p. 3). Defendant has failed to produced any evidence suggesting that the Sisters of Providence is no longer controlled by the Roman Catholic Church. The Court therefore considers the Department of Labors opinion as still valid for purposes of this motion.

[9] The Department of Labor reached its conclusion in Advisory Opinion 95-07 regarding Providence Services, which later changed its name to PH&S. (Sieler Dec., Ex. 2, p. 5). The IRS reached its conclusion regarding the Sisters of Providence in Washington and Providence St. Peter Hospital under 26 U.S.C. § 414(e)(3)(B)(ii), which mirrors 29 U.S.C. § 1002(33)(C)(ii)(II). (Rogers Dep., Ex. 2, p. 6). Providence St. Peter Hospital is a division of PH&S.

"controlled by" test used in *Catholic Charities,* the Court reaches the same conclusion. The Sisters of Providence has the exclusive right to appoint and remove PH&S's board of directors and its chairperson at any time with or without cause[10]. (Sieler Dec., Ex. 2, p. 6). This more than satisfies the "controlled by" test of *Catholic Charities*, as the Sisters of Providence holds the right of *appointment* and *removal* as it applies to *every* member of the board of directors. §(33)(C)(ii)(II) is therefore satisfied as the provision only requires that the organization be "controlled by" *or* "associated with" a church to qualify as a church plan.

PH&S is also "associated with" the Roman Catholic Church through the Sisters of Providence. Again, Defendant admits to this association (Sieler Dec., Ex. 2, p. 3), and the Department of Labor and the IRS both concluded that the association exists. *Id* at 5; (Rogers Dep., Ex. 2, p. 6). The Court reaches the same conclusion by applying the "associated with" test provided under §(33)(C)(iv). That provision states "an organization . . . is associated with a church . . . if it shares religious bonds and convictions with that church." It is clear that PH&S shares religious bonds and convictions with the Roman Catholic Church. By its bylaws, all of PH&S's medical staff is required to adhere to *The Ethical and Religious Directives of the Catholic Health Care Services* as a condition of their employment. (Sieler Dec., Ex. 2, pp. 5-6). Among other things, the *Ethical and Religious Directives* state that PH&S "must be animated by the Gospel of Jesus Christ and guided by the moral tradition of the Church," that PH&S's "medical research must adhere to Catholic moral principles," and that "[PH&S's] employees . . . must respect and uphold the religious mission of the institution and adhere to these Directives." (Montgomery Dec., Ex. 31, p. 3).

Because PH&S is controlled by and associated with the Roman Catholic Church through the

---

[10] The Sisters of Providence also possesses other rights suggesting that it has control over PH&S. For example, the Sisters of Providence has the exclusive right to appoint and remove the President &CEO of PH&S. (Sieler Dec., Ex. 2, p. 6). It has the exclusive right to alter, amend or repeal the Articles of Incorporation and Bylaws of PH&S. *Id* at 5. It has the exclusive right to adopt or change PH&S's mission, philosophy, and values. *Id* at 6. It also has the right to approve the acquisition of assets, the incurrence of indebtedness, the dissolution, liquidation, consolidation or merger with another corporation or entity. *Id* at 6-7.

Sisters of Providence, and because PH&S has not outsourced administration of the LTD Plan to a third party, the LTD Plan qualifies as a church plan as defined by ERISA. Defendant failed to offer any evidence establishing a material issue of fact as to whether PH&S is controlled by or associated with the Roman Catholic Church[11]; therefore Plaintiff's has satisfied the first element necessary to qualify the LTD Plan for a church plan exception.

### B. PH&S did not Elect to have the LTD Plan Governed by ERISA.

ERISA exempts from its coverage "a church plan, as defined by § 1002(33) of this Title *with respect to which no election has been made under § 410(d) of Title 26.*" 29 U.S.C. § 1003(b)(2) (permitting an otherwise exempt church plan to make an irrevocable election pursuant to § 410(d) to have ERISA apply to such a plan). A § 410(d) election must be made "in such form and manner as the secretary may by regulations prescribe." 26 U.S.C. § 410(d). The regulations for making § 410(d) election are contained in 26 C.F.R. § 1.410(d)-(c). The election must be made by the plan administrator of the church plan (PH&S in this case), who must attach a statement to either the annual return required under § 6058(a) [the Form 5500], or a written request for a determination letter relating to the qualification of the plan. *Id*. The statement "shall indicate (i) *that the election is made under § 410(d)* of the Code and (ii) the first plan year for which it is effective." 26 C.F.R. 1.410(d)-(c)(5) (emphasis added).

PH&S has never submitted a statement under § 410(d) electing to have the LTD Plan governed by ERISA. (Rogers Dep., pp. 7-8). While PH&S did file "5500 [Forms] for a number of years," at no point did it make an affirmative election under § 410(d) as required to have the ERISA apply to the LTD Plan. *Id*.

*Torres* illustrates the affirmative and specific election required in order to have ERISA apply to a church plan. 523 F.Supp.2d at 141. In that case, the court found several statements (including one

---

[11]Defendant instead focused almost exclusively on the "principal purpose" element required under (33)(C)(i). As is explained above, Defendant's argument interpreting (33)(C)(i) narrowly as restricting church plans via the "principal purpose" language contained therein is incorrect.

ORDER
Page - 9

attached to a Form 5500) by the plan administrator (also a hospital) declaring that ERISA applied to the church plan, as insufficient to satisfy the requirements of 26 C.F.R. § 1.410(d)-(c). The court acknowledged the hospital's intention to have ERISA apply, but stated that 26 C.F.R. § 1.410(d)-(c) imposes a strict requirement that the electing party state explicitly that it is making its election *under § 410(d).*" *Id*. at 141 fn. 3 (emphasis added).

The Court agrees that 26 C.F.R. § 1.410(d)-(c) requires a strict election, especially considering the irrevocable nature of the election after it is made. While PH&S may have believed that ERISA applied to the LTD Plan (after years of filing Form 5500's), such was not the case. Because Defendant has failed to provide any factual support that PH&S effectively elected to have ERISA apply to the LTD Plan under § 410(d), Plaintiff's motion for summary judgment on this issue is GRANTED.

**C. Defendant's Cross Motion for Summary Judgment is DENIED**

Defendant's cross motion for summary judgment seeks dismissal of all Plaintiff's claims. Defendant's motion is necessarily dependent on a determination that the LTD Plan is governed by ERISA[12]. The Court has determined that the LTD Plan is a church plan not governed by ERISA. Because ERISA does not apply to the LTD Plan, Defendant's cross motion for summary judgment is DENIED.

**III. Conclusion**

For the reasons stated above, Plaintiff's Motion for Summary Judgment on Defendant's ERISA defense, [Dkt. #13], is hereby GRANTED. Defendant's affirmative ERISA defense is dismissed with prejudice. Defendant's Cross Motion for Summary Judgment, [Dkt. #23], is DENIED.

IT IS SO ORDERED.

---

[12]Defendant presents the following three cognizable arguments in its cross motion for summary judgment: (1) that Plaintiff lacks standing to bring suit against LINA under ERISA, because ERISA does not allow suits against claims administrators (LINA in this case); (2) that were Plaintiff to name PH&S as a defendant due to its role as the plan administrator (as is allowed under ERISA), diversity would be destroyed; and (3) that all of Plaintiff's state law claims are preempted by ERISA [Dkt. #23].

Dated this 14th day of April, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 11